# Evans *against* Duncan.

Real estate was devised, but afterwards sold by the sheriff as the property of the devisor: the proceeds of such sale must be appropriated to the payment of the .debts of the devisor, and not of the devisee, although it may appear that there is other and sufficient estate of the devisor to pay his debts.

In an action against two defendants, the writ was served but upon one: the other appeared before the arbitrators and made defence ; and an award having been made in favour of the plaintiff, he appealed. Held, that the award was a lien upon such defendant's real estate.

Upon a sale of real estate by the sheriff, which had been specifically devised, the proceeds were brought into court and appropriated to the payment of the debts of the devisor, to the exclusion of the debts of the devisee. Held, that the lien creditors were not entitled to a general substitution to the rights of the creditors to whom the money was decreed, so as to enable them to proceed against the general estate of the testator, to the prejudice of other devisees and legatees.

A debt created by a devisee in defending the possession of land devised to him, shall not be paid as a debt of the estate of the testator, upon the appropriation of the proceeds of such a sale.

APPEAL from the decree of the court of common pleas of *Dauphin* county, appropriating the proceeds of the sale of the real estate of Thomas Duncan deceased.

All the facts which gave rise to the questions of law determined, are sufficiently stated in the opinion of the court. The cause was argued by

*Harris* and *M'Clure*, for the appellants.
*H. Alricks*, for Hopkins.
*M'Cormick*, for the appellees.

The opinion of the Court was delivered by

KENNEDY, J.—The appeal in this case is from a decree of the court below, appropriating the money arising from a sale made by the sheriff of a tract of land called the " Big Island," situate in the Susquehanna river: which was taken in execution and sold as the property of Thomas Duncan deceased, at the suit of some of his creditors ; and also at the same time as the property of his son Stephen Duncan to whom he had devised it, at the suit of some of his creditors. The money arising from the sale being 13,775 dollars, a sum not sufficient to satisfy the claims of both sets of creditors, nor indeed the aggregate of either, was brought into the court below by the sheriff, that it might be appropriated by the order of the same. The creditors of the father claimed to have it applied towards payment of their claims. This was opposed by the creditors of the son, who

alleged that they ought to have it. The court below, after a hearing of the parties, on the 15th of July 1834 made a decree in the following terms: "the court order the costs to be deducted from the money in court in this case; the residue to be distributed *pro rata* among the creditors of Thomas Duncan deceased, who have presented their claims for adjudication, except that of George Harrison rejected; and except the claims of James Hopkins, Esq. and George Fisher, Esq. which have been allowed to be presented for adjudication, but are rejected because they are not debts of Thomas Duncan, and the services on which they are founded were rendered at the instance of Stephen Duncan, not in the character of executor of Thomas Duncan, but in that of devisee. George W. Harris, administrator of R. T. Jacobs deceased, is ordered to be substituted instead of the creditors of Thomas Duncan, who have received the money in court, so far as they have been paid, against the residue of the estate of Thomas Duncan, to the extent of Stephen Duncan's interest in the 'Big Island,' after deducting from the value thereof that portion of the debts, charges and legacies, to which it was legally liable, as the estate of Thomas Duncan. Mr Harris to be substituted so far as his judgment, as administrator of Jacobs, against Stephen Duncan, viz. No. 12 in the common pleas of Dauphin county of November term 1832, would be entitled to be paid agreeably to its priority out of the proceeds of sale of the 'Big Island,' if the creditors of Thomas Duncan had not claimed the proceeds. The following claimants are ordered to be substituted instead of creditors of Thomas Duncan, upon the same terms as the administrator of R. T. Jacobs, to the extent of their claims respectively, agreeably to their priorities against Stephen Duncan, viz. Irvine and Huston *v.* Stephen Duncan and John D. Mahon for 1210 dollars 99 cents, by report of arbitrators, filed the 8th of March 1832; Hummel and Lebkickler *v.* The same, for 1401 dollars 70 cents, by judgment entered the 12th of August 1832."

From this decree Mr Harris, the administrator of R. T. Jacobs, appealed; and James Hopkins, Esq. did the same.

First, it is alleged that the court below erred in not appropriating the money to the payment of the debts owing to the creditors of Stephen Duncan, which had become liens upon the land before it was sold. This is contended for on the ground that Thomas Duncan, by his will, after devising the land from which the money has been raised, to his son Stephen Duncan in fee, has appropriated other lands and funds for the payment of his debts: and that although the creditors of Thomas Duncan, in seeking payment of their debts, are not confined or restricted exclusively to look to the funds and property which he has set apart for that purpose in his will; yet having them and the residue of his estate all bound for the payment of their debts, equity will compel them, as they have two funds, to resort to that fund which will enable the creditors of Stephen Duncan to have their debts paid also. But the creditors of

IV.—D

[Evans v. Duncan.]

Thomas Duncan, having the eldest claim upon the fund in the court below and being entitled to be paid immediately out of it, cannot be delayed, but have a right to be preferred, unless some good reason, consistent with the principles of justice as well as equity, can be given why it should not be so. It may be very advantageous and all important to them to receive their money with as little delay as possible; and being entitled to have received their debts long since, if they could have got them, it would, therefore, be contrary to both law and equity to pass a decree that would in its effect delay them in the receipt thereof a single minute longer than is indispensably necessary for a final determination of the controversy. The law considers it fraudulent to hinder or delay creditors in receiving their just debts after that they have become payable. But it is self-evident that to decree the money in court to the creditors of Stephen Duncan, would inevitably delay the creditors of Thomas Duncan, in the receipt of their debts, to a future period almost unknown. It would necessarily postpone the payment of them until money for that purpose could be raised from the sale of other lands, which might require considerable time, perhaps years, to accomplish it.

There are also other objections. Many of the lands appropriated by Thomas Duncan, in his will, to the payment of his debts, lie out of the state, in different parts of the union; and their value, as well as that of those lying within the state, set apart for the same purpose, has not been shown; and for aught that appears they may be inadequate. Such a decree, then, as was asked for on the part of the appellants, might have defeated the creditors of Thomas Duncan in receiving full payment of their claims at any future time. The court below were therefore clearly right in giving the money to the creditors of Thomas Duncan.

The next exception to the decree of the court is, that they awarded the money to persons claiming to be creditors of Thomas Duncan, without their producing sufficient evidence of the fact. This exception does not appear to be sustained, and indeed has been given up.

The third exception is, that the court erred in not deciding which of the lien creditors of Stephen Duncan were entitled to substitution, and to what extent. Believing, however, as I do, that part of the decree which subrogated the creditors of Stephen Duncan to the rights of the creditors of Thomas Duncan, and authorized them to proceed upon the securities of the latter against the residue of the estate of Thomas Duncan, to be erroneous if not absolutely void; I shall assign my reasons for thinking so, after having disposed of the fourth and last exception, to which I will now pass.

The last exception is, that the court in decreeing substitution, gave priority to the award and judgment in favour of Irvine and Huston v. Stephen Duncan and John D. Mahon, over the judgment in favour of George W. Harris, administrator of R. T. Jacobs v. Stephen Duncan. The objection to this preference given by the decree of the court is, that the award in favour of Irvine and Huston,

[Evans v. Duncan.]

though of earlier date than Harris's judgment, was against John D. Mahon alone, and not against Stephen Duncan, and therefore no lien upon the property sold. If the fact were so, the objection would be insuperable. But it appears from the report of the arbitrators accompanying their award, that S. Duncan being joined with John D. Mahon in the original writ as a co-defendant, though not served with it, attended as a party before the arbitrators at their different meetings, and made defence against the claim of the plaintiffs. It is true that it does not distinctly and expressly appear, from the report of the arbitrators, that Stephen Duncan made himself a co-defendant with John D. Mahon, upon whom the writ was served, before them : and if the award had been suffered to remain unappealed from, it might probably have been considered doubtful whether he had appeared before the arbitrators with a view of being considered a co-defendant, and was embraced as such by the award. But after the award was filed in the prothonotary's office, he appeared there within the twenty days allowed by law for that purpose, and entered an appeal from it expressly for himself as well as for Mahon. Now if he had not intended to make himself a party to the case, while it was pending before the arbitrators, and had not considered himself as embraced along with Mahon in their award, it is impossible to assign any rational motive for his entering an appeal for himself. It is not sufficient, as has been alleged, that he did it because he was a co-partner with Mahon, and therefore interested, notwithstanding their award was against Mahon only. For if he was likely to be injured by an erroneous award from such connexion with the party against whom it was made, it would have been all sufficient for him to have entered an appeal for Mahon alone. But it was impossible for him, from the very nature of the thing itself, to have entered an appeal from the award for himself, unless it existed against him as a co-defendant. And by his doing so he has relieved the case from all doubt that might otherwise have hung over it. The writ commencing the suit was sued out against him and Mahon jointly, and though not served by the sheriff upon him, he had a right to come in and appear to the action at any time while depending, and take defence as a co-defendant; and having done so, as it would appear in this case, he is bound by the award until it shall be reversed. The court were right also in permitting the declaration to be amended so as to accord with Duncan's subsequent appearance in the action to answer the plaintiffs.

I come now to notice the substitution which was decreed by the court. It appears to me that there are various objections to it. In the first place, it strikes me very forcibly, that for want of the parties being before the court, whose rights may be affected by the operation of it, the court had no power or authority to make it. The other devisees named in the will of Thomas Duncan, besides his son Stephen, were not parties to the proceeding, nor could they with propriety be so considered ; yet the decree for substitution has put it

[Evans v. Duncan.]

in the power of the judgment creditors of Stephen Duncan, who had acquired liens by their judgments upon his interest in the land sold, to proceed and levy their debts out of the property devised to them. The ground upon which the creditors of Stephen Duncan claim a right to be substituted, is that of his being a devisee under the will of Thomas Duncan, and entitled as such to the Big Island, the land sold, upon which they had acquired liens as a security for the payment of their debts against him. They allege that, this devise to Stephen Duncan having been taken from him, and from them too, to pay the debts of the testator, Stephen Duncan the devisee is entitled to have contribution for the loss from the other devisees; and that they as creditors of Stephen Duncan, having thereby lost the security which they had for the payment of their debts, by virtue of their liens on the devise, have a right to be placed in his shoes, and to claim the benefit of his rights. Now it is obvious that the substitution in this case has been made to furnish the judgment creditors of Stephen Duncan with the means of obtaining, in his stead, contribution from the other devisees claiming under the will of Thomas Duncan; and that it is their rights alone, upon this principle, that are to be operated against by the decree of contribution. It would therefore be contrary to the first principles of justice that they should be condemned to pay money, or to have their rights disposed of for the benefit of others, without an opportunity of being heard first. They might, for aught that appeared to the court when they made the decree, if previous notice had been given them, have shown good cause why contribution should not be allowed. They perhaps might have shown that they were as great losers, from a like cause, as Stephen Duncan. Besides, the decree is exceptionable for uncertainty; and could not, I suppose, have been made easily otherwise for want of the necessary *data* to fix on any certain sum for which contribution ought to be had, admitting the right to exist. It would seem therefore as if it had been left to the discretion of the creditors themselves of Stephen Duncan, in whose favour the decree was made, to assess and levy such amount as they might think right. There is also a third objection, of very considerable moment as it appears to me, which is, that the decree has put it in the power of the creditors of Stephen Duncan, who had no right whatever to the land sold, except what he derived through the will, from the bounty and favour of the testator, and which could not therefore be asserted in any form that would contravene the other provisions expressly contained in it, to interfere with, and to prevent the administrator *cum testamento annexo*, from selling, in the manner that may be most advantageous to those concerned, the real estate of the testator, as required by his will. The testator has directed all his estate, except what he devised and bequeathed specifically, to be sold by his executors, and the proceeds thereof, after paying his debts, the charges of sale and the legacies bequeathed, to be disposed of in the manner therein

[Evans v. Duncan.]

directed.  It is therefore manifest, that to permit the creditors of Stephen Duncan to proceed *ad libitum* to levy upon and sell the estate of the testator by the sheriff at forced sales, would not only cause a great sacrifice of the interests of those devisees and legatees named in the will, and quite as much the objects of the testator's bounty as Stephen, but would measurably thwart the whole design of the testator.  Such power certainly ought not to be granted to Stephen Duncan himself, and consequently not to his creditors, who do not pretend that they have a right to be placed in any better situation than himself.  It would be most inequitable, as well as unjust, to permit either him or them to do any thing that would militate against the design of the testator, as expressed in his will ; and who had the right to regulate the disposition of his estate as he pleased, so far as his devisees and legatees were concerned, and against whose wishes they have no right to ask a benefit under the will.

The remaining part of the estate of the testator, excepting that portion specifically devised and bequeathed, will no doubt be converted into money as soon as it can be accomplished without making too great a sacrifice of it; when, if the right to contribution exists, it may be enforced by a proper course before a competent tribunal, when all concerned will have a full opportunity of being heard.

With regard to the appeal taken in this case by Mr Hopkins, the only question involved in it seems to be a matter of fact, and from the evidence, we cannot say that the decree given by the court below, in respect to his claim, was wrong.  That part of the decree of the court appropriating the money as they did, is affirmed; but that part of it decreeing the substitution, is reversed ; and the costs of the appeal are directed to be paid by the appellants.

Decree accordingly.