Cramer v. Sharp.

HARRIET CRAMER and GEORGE W. SHARP, appellants,

*v.*

JACOB F. SHARP et al., respondents

1. In case of intestacy, where there is no widow, administration must be granted to one of the next of kin, if any one of them, against whom no disqualifying objection exists, will accept it.

2. The right of administration grows out of the right to distribution, and those, therefore, who are entitled to the intestate's clear estate, have an exclusive primary right to administration.

·3. While the court is not bound to approve the nominee of the majority in interest, still, where they select one of their own number, against whom no ·objection exists, it will, as a general rule, appoint their nominee.

4. Where the appointing power has a discretion to select one or more from a class, and there are several claimants, it should, in deciding to whom the ·grant shall be made, give full consideration to the moral fitness and integrity ·of the several claimants.

On appeal from the orphans court of the county of Hunterdon.

*Mr. William H. Johnson, Mr. William C. Gebhardt* and *Mr. George M. Shipman,* for the appellants.

*Mr. H. Burdett Herr, Mr. Martin Wyckoff* and *Mr. John N. Voorhees,* for the respondents.

THE VICE-ORDINARY.

This is an appeal from an order of the orphans court of the county of Hunterdon, committing the administration of the personal estate of Ann Sharp, deceased, to the respondent Jacob F. Sharp. Mrs. Sharp died intestate on the 12th day of July, 1891, leaving, as her next of kin, two sons and three daughters and six grandchildren, the children of three deceased sons. The respondent is the eldest of the decedent's two surviving sons. On his applying for administration, the other son and one of the

-daughters objected to his appointment, and asked that adminis-tration be granted to them. Subsequently, and after all the next of kin had been cited to appear, the court, without hearing evi-dence, neither party having offered any, but after hearing the -counsel of the parties, and at the request of the next of kin representing six-eighths of the estate, made the order which is the -subject of the appeal. The reason stated by the appellants, in -one of the petitions filed in this court, why no evidence was sub-mitted in the court below, is, that the parties agreed to go before -the judge of the orphans court and leave the matter, as to who should be appointed, to him. The particular ground upon which :a reversal of the order is asked is, that the respondent is an unfit person to have the administration of his mother's estate, because he has committed a fraud upon her estate, and, also, because he has committed other frauds upon the estate of his father. The -charge made against him, in respect to his mother's estate, is, that he fraudulently abstracted from among her securities, either while she was alive or shortly after death, a promissory note -which she held against him, and has destroyed it or now con--ceals it. And in respect to his father's estate, the charge is, that as one of the executors under his father's will he has attempted, through the intervention of third persons, to acquire title to cer--tain lands, of which his father died seized, at less than their fair -value.

Both parties have been heard here by their proofs. The first --charge does not appear to have any foundation in fact. The evi-dence entirely fails to establish it. The second, however, is true, by the respondent's admission, to this extent: He, as one of the executors under his father's will, sold a house and lot, situate in the city of Newark, to his brother-in-law, the husband of the -female appellant, under an arrangement by which he was to receive one-half of whatever profit might be made on a resale -of the property. He, in addition, admits that he would not have sold the property for the sum bid by his brother-in-law if he had not believed that his brother-in-law intended to make a -division of profit. The arrangement was not carried out. The ιpurchaser swears that, although it is true such an arrangement

was proposed to him, he did not assent to it, and afterwards,. when the respondent asked him to perform it, he refused. Whether it be true that the arrangement was only proposed, or was actually made, one thing is certain, the respondent either did, or was willing to, commit a fraudulent breach of his duty. But his conduct in this regard is not wholly inexcusable. One of the persons associated with him as an executor in the execution of his father's will, and he a lawyer of repute, swears that in consequence of the great difficulty the executors encountered in making sale of the testator's real estate, the adult children agreed that the respondent and the male appellant, who was also an executor under his father's will, might purchase, at public sale, such parts of their father's real estate as they desired. The fact is undisputed that the respondent and the male appellant had each, prior to the sale of the Newark property, purchased, at sales made by themselves and their co-executor, one of their father's farms. The brother-in-law says, when the respondent first proposed to him that he should buy the Newark property for their joint benefit, he remarked that he understood the law to be that an executor could not become a purchaser, either directly or indirectly, at his own sale, and that the respondent replied that the lawyer associated with him in the execution of the will had advised him that it would be all right for him to do so. The respondent evidently acted under that belief, for, very soon after the sale of the Newark property had been made, he told several persons, among whom were his brother and two of his sisters, that he was interested "as a partner" in the purchase. There was nothing secret or clandestine about his conduct. He made no attempt to conceal his interest in the purchase.

The rule prescribed by the statute, regulating the granting of administration, is, that it shall be granted to the widow or next of kin of the intestate, or to some of them, if they, or any of them, will accept. *Rev. p. 758 § 28.* Our statute is, in substance, a duplicate of *21 Hen. VIII. ch. 5 § 3. 1 Wms. Exrs. 416.* Where there is no widow, administration must be granted, as was said by the present surrogate-general, in *Donahay v. Hall, 18 Stew. Eq. 720, 721,* to the next of kin, if one of them, who

is not subject to personally disqualifying objections, will accept it, for the principle that underlies the grant is, that it shall be committed to those who are the ultimate or residuary beneficiaries—that is, to those whom the residue of the estate will go when the administration is completed.   The right of administration grows out of the right to distribution, and, consequently, those who are entitled, by the statue of distribution, as to what remains as the intestate's clear estate, after the payment of debts and expenses of administration, have an exclusive primary right to administration.   This right, it has been held, is purely personal, not coupled with any power or right on the part of the person possessing it, to nominate or select the person to be appointed.   *In re Cresse, 1 Stew. Eq. 236, 237.*   This is undoubtedly true where a part of the next of kin, even a majority, ask for the appointment of a stranger against the will of one of their own number, who is willing to take the appointment and qualified to be the appointee.   But the rule is different where the majority ask for the appointment of one of their own number. Where that is the case, as Sir John Nicholl said, in *Budd v. Silver, 2 Phillim. 115,* and "there is no material objection on one hand, or reasons for preference on the other, the court, in its discretion, puts the administration into the hands of the person with whom the majority of the interests are desirous of entrusting the estate."   While the request of a majority does not bind the court absolutely, for the reason that the statute makes it the duty of the court, in the exercise of its discretion—which must, of course, be a judicial discretion, regulated by principle and not by caprice—to appoint an administrator from among the next of kin; yet, where the majority nominate one of their own number, against whom no disqualifying objection exists, the court will, as a general rule, appoint their nominee.   And the reason is, that those having the largest interest in the estate may, in the majority of instances, from considerations of self-interest, be safely trusted to select that person of their own number who is most competent, by reason of his integrity and business qualifications, to administer the estate honestly and successfully.   This is the rule which prevails in Pennsylvania.   *Ellmaker's Estate, 4 Watts*

*24; McClellan's Appeal, 16 Pa. St. 110, 115.* The latest statement of the rule that has come under my notice was made by Lord Penzance, *In Goods of Sarah Stainton, L. R. (2 Pro. & Div.) 212, 213,* where he said, that if the majority of interests desire that the administration shall be placed in the hands of one of the next of kin, the court, in its discretion, will usually grant it to the nominee of such majority. This is the general rule.

Under this view of the law, it would seem to be clear that, as the respondent was one of the next of kin of the intestate and the choice of the majority of interests, his appointment was entirely proper, unless his misconduct operated, as a matter of law, to totally disfranchise him. I know of no adjudication which declares that a single breach of duty or a single act of dishonesty will produce such a result. No doubt can be entertained, as Chancellor Walworth held, in *Coope* v. *Lowerre, 1 Barb. Ch. 45, 47,* that where the appointing power has a discretion to select one or more persons of a class, it should, in deciding to whom the grant shall be made, give full consideration to the moral fitness and integrity of the several claimants. But the application of that rule to this case will not result in the reversal of the order under consideration. The male appellant has been guilty of the same kind of misconduct with which the respondent is chargeable. He, while acting as executor under his father's will, purchased one of his father's farms, and still retains the title to it. Besides, he has shown, by his acts, that he has full confidence in the respondent's honesty and business capacity. He and his co-executor made the respondent the financial agent of the testator's estate, by deputing to him the duties of receiving and disbursing the moneys of the estate and keeping the accounts. He still retains that position. The female appellant is a married woman. Without expressing an opinion on the question whether or not a married woman is competent, in any case, to take a grant of administration, I regard it as quite certain, in view of the provisions of the one hundred and twenty-second section of the Orphans Court act (*Rev. p. 779*), which declare that, in case of the marriage of any female administratrix, her power over the estate shall immediately cease and be sus-

Cramer *v.* Sharp.

·pended, and she shall be removed from office, 'unless she and her husband give bond to the ordinary, with two or more sufficient :sureties, conditioned for the faithful performance of their duties, that no such grant should be made to her except in conjunction ·with her husband. So that, if a grant were made to the female .appellant, it seems to be clear that the letters would go to her .husband as well as to her. Her husband is the person with whom the respondent either colluded or sought to collude for the purpose of making a profit out of his trust. He occupied a .position where he had a right, by the exercise of fair means, to buy as cheap as he could; but I think it appears quite clearly, from his own evidence, that, by toying with the respondent's proposal as though inclined to accede to it, and in not distinctly .and positively rejecting it, he entrapped the respondent into selling the Newark property to him for less than he otherwise would. In view of the part he took in that transaction, as he himself describes it, I do not think it can be fairly said that his position, in point of moral fitness and integrity, is a whit better than that ·of the respondent.

All things considered, my conclusion is, that the order appealed from should be affirmed, but without costs. Neither party will be allowed either costs or counsel fees out of the estate. Where ·the contest is, as in this case, as to which of two or more persons shall be appointed an administrator, the costs of the litigation should, as a general rule, be imposed on the parties, or on one ·of them, and not on the estate. To impose them upon the estate will, as is obvious, serve to encourage a species of litigation which ought, in many instances, to be discouraged rather than ·encouraged.